UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| CARSTENS COMPANY, a Washington corporation,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>THE ST. PAUL COMPANIES, INC., a foreign corporation,<br><br>　　　　　Defendant. | Case No. C02-5627FDB<br><br>ORDER DENYING PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT AND GRANTING IN PART AND DENYING IN PART DEFENDANT'S CROSS MOTION FOR PARTIAL SUMMARY JUDGMENT |

I.

Plaintiff Carstens Company ("Carstens") has filed suit against defendant The St. Paul Companies, Inc. ("St. Paul") for breach of contract, violation of the Consumer Protection Act, bad faith, unjust enrichment, and declaratory relief arising out of several insurance contracts Carstens had with defendant.[1]

---

[1] The Court is aware that there is an issue as to whether The St. Paul and/or St. Paul Fire & Marine Insurance Company are proper defendants. The Court will not address that issue in its Order. Said issue will be resolved separately.

ORDER - 1

Plaintiff now moves for partial summary judgment, requesting an order declaring that St. Paul denied its duty to defend Carstens under the aforementioned polices in bad faith. Plaintiff further requests that it be awarded attorney's fees for St. Paul's bad faith breach of its duty to defend. Lastly, plaintiff moves that the Court declare St. Paul's breach of its duty to defend a *per se* violation of Washington's Consumer Protection Act. Defendant opposes plaintiff's motion and has filed a cross-motion for partial summary judgment. In addition to moving for summary judgment on the issues raised by plaintiff, defendant moves for partial summary judgment on its duty to indemnify plaintiff.

The central issues for the Court to decide are: (1) whether St. Paul breached its duty to defend Carstens under any of the policies at issue; (2) whether St. Paul has a duty to indemnify Carstens under any of the policies at issue; (3) whether St. Paul acted in bad faith; and (4) whether St. Paul violated the Consumer Protection Act. To aid the Court in resolution of these issues, the Court heard oral argument on June 4, 2003. The Court has also considered the papers submitted by the parties and the entire record. For the reasons articulated herein, plaintiff's motion for partial summary judgment is DENIED and defendant's cross motion for summary judgment is GRANTED IN PART and DENIED IN PART.

## II.

The facts are virtually undisputed. Carstens Company is the successor of Carstens Packing Company, Carstens Holding Company and Carstens Investment Company (collectively referred to herein as "Carstens"). Carstens Packing Company originally conducted a meat packing and rendering facility located on the Thea Foss Waterway. On January 12, 1954, Carstens sold its business interests to Hygrade Food Products Corporation ("Hygrade"). Carstens continued to own the property, leasing it to Hygrade for several years until it sold the property to Hygrade on November 1, 1979.

ORDER - 2

   Carstens purchased several comprehensive general liability insurance policies from St. Paul and/or St. Paul Fire & Marine Insurance Company from 1952 through 1980.  Policy No. 2118852 (1953-56) was issued to Thomas Carstens.  Policy No. 504JA3089 (1956-57) was issued to Thomas Carstens and/or Carstens Holding Company and/or Carstens Investment Company.  Policy No. 684NA8160 (1979-80) was issued to Carstens Company.

   In February of 2002, Carstens was notified by William Hengemihle that Hygrade, while participating in a mediation regarding the allocation and settlement of CERCLA liability on the Thea Foss and Osgood Wheeler Waterways, had asserted to the mediator that its proposed share of liabilities was in part due to activities and ownership by Carstens.  Thereafter, Carstens was accepted as a limited participant in the mediation proceedings.  Carstens was a voluntary participant in a mediation process, the sole purpose of which was to settle all potential environmental claims associated with the Thea Foss and Osgood Wheeler Waterways in an effort to prevent the United States from filing suit against Carstens for its environmental liability.

   Once Carstens learned of the potential for environmental liability it promptly notified St. Paul in writing.  On February 22, 2002, Carstens tendered defense and requested indemnification.  On March 6, 2002, St. Paul informed Carstens that, based upon the information provided thus far, St. Paul was unable to make a determination as to whether Carstens was entitled to any rights or coverage in regard to the Thea Foss Waterway Superfund Site under any policy of insurance allegedly issued to Carstens.  In its March 6th letter, St. Paul also agreed to conduct an investigation of the matter and search for several policies which may have been issued to Carstens under a strict reservation of all rights.  St. Paul provided Carstens with a list of information it required in order to make a coverage determination.[2]  As of March 6, 2002, Carstens was not identified as a Potentially

---

[2] The list requested information, including but not limited to: (1) copies of each comprehensive general liability policy, environmental impairment liability policy or any other policy issued by St. Paul to Carstens which was in effect at any time from the insured's initial involvement

ORDER - 3

Responsible Party ("PRP"), no lawsuit was filed against Carstens, and no administrative action had commenced against Carstens.

On March 19, 2002, Carstens responded to St. Paul's March 6th letter by providing St. Paul with a confidentiality agreement. Carstens also provided documentation of its participation in the Thea Foss Participants Group, a copy of St. Paul Fire and Marine Policy No. 504JA3089 and a sale/lease agreement from the 1954 sale of Carstens' business interests to Hygrade. Based upon the information Carstens enclosed with its letter, Carstens renewed its demand for St. Paul to defend and indemnify it for the Foss Superfund Site Claims.

On March 25, 2002, Carstens e-mailed St. Paul a copy of the Consent Decree and requested a claim number. On March 26, 2003, St. Paul provided Carstens with a claim number. St. Paul also requested that Carstens respond to its March 6, 2003 letter. On April 1, 2002, St. Paul signed the confidentiality agreement. On April 16, 2002, Carstens provided St. Paul with Source Area Reports and a portion of the Preliminary Arbitration Report pursuant to the terms of the confidentiality agreement.

On May 2, 2002, St. Paul acknowledged receipt of the Consent Decree, Source Area Reports, Preliminary Arbitration Report and a partial copy of policy 504JA3089. St. Paul also stated that, based upon the information that had been provided to date, it was unable to make a determination as to whether Carstens was entitled to any rights or coverage under policy 504JA3089. St. Paul quoted policy 504JA3089's conditions and exclusions and reserved its rights on several issues, including: (1) whether an accident as defined by the policy has taken place; (2)

---

at the site to the present; (2) an inventory of each comprehensive general liability policy, environmental impairment liability policy or any other policy issued by any other insurance company to Carstens which was in effect at any time from the insured's initial involvement at the site to the present; (3) a complete inventory of all material(s) which were generated or disposed of by or on behalf of Carstens at the contaminated site; (4) all records which indicate the practices by or on behalf of Carstens which resulted or may have resulted in any material(s) entering the soil or groundwater at the contaminated site; and (5) documentation of any costs that may have been incurred by or on behalf of Carstens with respect to the claim.

ORDER - 4

whether property damage or bodily injury caused by an accident as defined by the policy occurred during the policy period; (3) whether the notice provision of the St. Paul policy has been complied with; and (4) whether, if any property damage had taken place, such property damage was intended, expected or reasonably could have been expected by Carstens. Lastly, St. Paul renewed its request for information.[3]

On May 20, 2002, Carstens wrote a letter to St. Paul and enclosed a copy of comprehensive personal liability policy no. 2118852 which was issued by Saint Paul Mercury Indemnity Company. Said policy referenced policy no. 2189483 which was also issued by St. Paul Mercury Indemnity Company. In its letter, Carstens gave St. Paul notice of occurrences under each policy based upon liabilities asserted against Carstens in connection with the Thea Foss Waterway Superfund Site. Carstens also informed St. Paul that its share for Remedial Design and Remedial Action would be between $138,000 and $144,000. Carstens told St. Paul that it needed its share paid so that Carstens could become a signatory to the Foss Waterway Consent Decree with the EPA and the private settlement agreement with the City of Tacoma. Lastly, Carstens requested that St. Paul provide a defense and coverage determination as soon as possible.

On June 18, 2002, Carstens renewed its request for coverage forms and likely limits for liability policies issued to Carstens during the relevant policy years. Carstens also renewed its request that St. Paul participate in nonbinding mediation concerning the existence, terms, or

---

[3] St. Paul's request for information was essentially a request for the same or similar information that it requested from Carstens in its letter of March 6th. However there were several additional inquiries which do not appear in St. Paul's March 6th letter, to include the following: "in addition to the above inquiries please provide explanations for the following: [1] please verify the exact Carsten's [sic] entity involved with this EPA action; [2] what is the relationship between Carstens Packing and Hygrade; [3] What Carsten's [sic] entity owned the land until sale to Hygrade; [4] what Carsten's [sic] entity still exist; and [5] please provide explanation for [the] relationship between Carstens and Tacoma Packing House, Spokane Packing House and other entities listed in Exhibit "B" to Bill of Sale and Assignment." See May 2, 2002 letter at page 5, attached as Exhibit 21 to the Declaration of Guy J. Sternal.

ORDER - 5

1  conditions of the St. Paul policies pursuant to WAC 284-30-940.  As of June 18, 2002, all

2  correspondence was addressed to St. Paul's legal counsel Gordon & Polscer.

3    On June 21, 2002, St. Paul responded to Carstens' letter of June 18tth.  In its letter, St. Paul

4  divided the insurance contracts under which Carstens sought coverage into three categories: (1)

5  insurance contracts allegedly issued to Carstens Packing Company; (2) liability insurance contracts

6  issued to Thomas Carstens and/or Carstens Holding Company and/or Carstens Investment Company;

7  and (3) comprehensive personal liability insurance contracts issued to Thomas Carstens.  After the

8  policies were categorized, St. Paul provided an explanation of the problems it had with each

9  category.[4]  Furthermore, St. Paul explained that it still needed all of the information requested in its

10 March 6, 2002 and May 2, 2002 letters in order to complete its coverage analysis.  St. Paul also

11 informed Carstens that it had searched its files and was unable to find any part of the 'alleged'

12 insurance contracts.

13   On July 10, 2002, Carstens received a letter from William Hengemihle informing Carstens

14 that its estimated share of clean up cost ranged between $135,000 to $145,000, and that by settling

15 the claims, Carstens would receive a covenant not to sue and contribution protection from the United

16 States and an indemnity from the City of Tacoma for any MTCA claims that might be asserted in the

17 future.  The letter also stated that if Carstens declined to participate in the consent decree, "one or

18 more of the PRPs that have agreed to perform the Waterway cleanup [would] likely nominate

19 Carstens for placement on the EPA's list of PRPs for the Waterway."  See July 10, 2002 letter,

20 attached as Exhibit 26 to the Declaration of Guy Sternal.  As of July 10, 2002, Carstens was not

21 identified as a PRP, the United States had not filed suit against Carstens, and no administrative action

22 had commenced against Carstens.

---

[4] St. Paul briefly explained its concerns with Carstens' claim in three major areas: (1) Carstens must establish that it is an insured; (2) Carstens must establish that a "suit" has been commenced against it; (3) St. Paul is willing to participate in nonbinding mediation.  See June 21, 2002 letter, attached as Exhibit 24 to the Declaration of Guy J. Sternal.

ORDER - 6

On July 15, 2002, Carstens sent a letter to St. Paul that included various documentation which showed the formation of Carstens Packing Company, its name change to Carstens Holding Company and a name change to Carstens Company. Carstens also forwarded a copy of William Hengemihle's July 10, 2002 letter to St. Paul.

On July 17, 2002, Carstens sent a letter to St. Paul which included a partial copy of comprehensive general liability protection policy no. 684NA8160. Carstens gave a notice of occurrences under said policy and renewed its claims for coverage and defense under the newly discovered policy. Carstens also informed St. Paul that its liability share for Remedial Design and Remedial Action was determined to be $141,525,00. Carstens further informed St. Paul that the amount did not include Natural Resource Damage claims asserted by the Commencement Bay Trustees.

On July 22, 2002, Carstens sent a complete copy of policy no. 684NA8160 to St. Paul. On August 29, 2002, St. Paul sent a letter to Carstens which stated that St. Paul was unable to make a determination regarding coverage for any of the policies at issue. St. Paul attributed its inability to make a coverage determination to the lack of information it had received from Carstens. St. Paul also acknowledged the receipt of various information from Carstens. St. Paul requested that if Carstens had provided all of the information in its custody and control which was responsive to St. Paul's June 21, 2002 letter, that it should please so inform St. Paul in writing. St. Paul reiterated its position that without the requested information it would not be able to make a determination regarding whether it had an obligation to fund any or all of Carstens' payment under the Consent Decree. St. Paul also explained some problems it had with policy no. 504JA3089 and policy no. 684NA8160.[5]

---

[5] With respect to policy no. 504JA3089, St. Paul asserted that "Carstens has the burden to prove that the claim for which it seeks coverage constitutes property damage caused by an accident during the policy period." St. Paul further stated that Carstens must prove that the claim is "in connection with the business, occupational or commercial pursuits of the named insured . . . ." With

ORDER - 7

On September 11, 2002, St. Paul sent Carstens a letter which accused Carstens of sending select information rather than all of the information requested. St. Paul also stated that it was "not required to make payment on any claim until adequate proof of a covered claim has been submitted." See September 11, 2002 letter at page 1, attached as Exhibit 30 to the Declaration of Guy Sternal. St. Paul went on to state that "[b]ecause St. Paul's obligations to Carstens, if any, cannot be determined at this time, Carstens should proceed with prudence and do what it deems necessary to protect its interest." See September 11, 2002 letter at page 2.

On October 28, 2002, Carstens filed suit against St. Paul in <u>Carstens Company v. The St. Paul Companies, Inc</u>., case no. 02-2-12547-1, in the Superior Court of the State of Washington in and for the County of Pierce. On November 27, 2002, St. Paul removed this matter to the United States District Court for the Western District of Washington at Tacoma. On March 3, 2003, the United States filed suit against Carstens and other defendants in <u>USA v. Advance Ross Sub Company, et al.</u> On April 3, 2003, St. Paul agreed to defend Carstens in <u>USA v. Advance Ross Sub Co. et. al.</u> under a reservation of rights to deny coverage.

III.

A.

Both parties have moved for partial summary judgment on plaintiff's claims of: (1) breach of the duty to defend; (2) bad faith; and (3) violation of the Washington Consumer Protection Act. Defendant has moved for summary judgment on the issue of its duty to indemnify plaintiff. Summary Judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on

---

respect to policy no. 684NA8160, St. Paul asserted that "Carstens has the burden to prove that the claim for which it seeks coverage constitutes property damage resulting from an accidental event." St. Paul also quoted language from the pollution exclusion in policy no. 684NA8160: "we won't cover liability claims for injury or damage caused by the continuous or intentional discharge or release of pollutants such as: Smoke. Vapors. Soot. Fumes. Acids. Alkalis. <u>Toxic chemicals, liquids or gases. Or waste materials</u>. But we will cover accidents involving these pollutants." See August 29, 2002 letter at page 3, attached as Exhibit 29 to the Declaration of Guy Sternal.

ORDER - 8

file show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). Summary Judgment is not proper if material factual issues exist for trial. Warren v. City of Carlsbad, 58 F.3d 439, 441 (9th Cir. 1995), *cert. denied*, 516 U.S. 1171 (1996).

If the moving party shows that there are no genuine issues of material fact, the non-moving party must go beyond the pleadings and designate facts which show a triable issue. Celotex Corp. v. Catrett, 477 U.S. 317, 322-323 (1986). Summary Judgment is proper if the moving party shows that there is no evidence which supports an essential element to the non-moving party's claim. Celotex, 477 U.S. 317 (1986). The substantive law governs whether a fact is material. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

B.

Under Washington law the duty to defend is separate from the duty to indemnify. Dewitt Construction Inc. v. Charter Oak Fire Insurance Company, 307 F.3d 1127, 1137 (9th Cir. 2002). The duty to defend is broader than the duty to indemnify and is one of the main benefits of an insurance contract. Truck Ins. Exch. v. Vanport Homes, Inc., 147 Wash.2d 751, 760, 58 P.3d 276 (2002) (En Banc) (citing Hayden v. Mut. of Enumclaw Ins. Co., 141 Wash.2d 55, 64, 1 P.3d 1167 (2000); Safeco Ins. Co. v. Butler, 118 Wash.2d 383, 392, 823 P.2d 499 (1992)). The duty to defend is triggered "whenever a lawsuit is filed against the insured alleging facts and circumstances arguably covered by the policy." Kirk v. Mt. Airy Insurance Company, 134 Wash.2d 558, 561, 951 P.2d 1124 (1998) (En Banc); see also Vanport, 147 Wash.2d at 760 ("the duty to defend arises when a complaint against the insured, construed liberally, alleges facts which could, if proven, impose liability upon the insured within the policy's coverage.")(quoting Unigard Ins. Co. v. Leven, 97 Wash. App. 417, 425, 983 P.2d 1155 (1999)); Time Oil Company v. Cigna Property & Casualty Insurance Company, 743 F. Supp. 1400, 1419-20 (W.D. Wash. 1990) ("An insurer's duty to defend arises when a complaint against its insured is filed and is to be determined from allegations of the

ORDER - 9

complaint.") If the complaint is ambiguous, it will be liberally construed in favor of triggering the insurer's duty to defend. See <u>R.A. Hanson Co. v. Aetna Ins. Co. v. Aetna Ins. Co.</u>, 26 Wash. App. 290, 295, 612 P.2d 456 (1980).

In <u>Vanport</u>, the Supreme Court of Washington, sitting en banc, identified two exceptions to the general rule that the duty to defend may only be determined from the allegations of a complaint. First, "if coverage is not clear from the face of the complaint but may exist, the insurer <u>must</u> investigate the claim and give the insured the benefit of the doubt in determining whether the insurer has an obligation to defend." <u>Vanport</u>, 147 Wash.2d at 761 (emphasis added) (citation omitted). Second, "facts outside the complaint may be considered if (a) the allegations are in conflict with facts known to or readily ascertainable by the insurer or (b) the allegations of the complaint are ambiguous or inadequate." <u>Vanport</u>, 147 Wash.2d at 761 (citations omitted).

In Washington, a PRP letter issued by the EPA is considered a "suit." Thus, in Comprehensive General Liability policies in which the insurer agrees to defend any "suit," the duty to defend is triggered upon the receipt of an EPA PRP letter by the insured. See <u>Time Oil Co.</u>, 743 F. Supp. at 1420. If an insurance policy includes arbitration proceedings within the definition of a "suit," the duty to defend will be triggered by the filing of an arbitration demand. See <u>Dewitt</u>, 307 F.3d at 1137. Once the duty to defend is triggered, insurers may not abandon policyholders and permit them to incur unintended legal costs while the insurer makes an indemnity determination. <u>Vanport</u>, 147 Wash.2d at 761 (citing <u>Kirk v. Mt. Airy Insurance Co.</u>, 134 Wash.2d at 563). If the insured is uncertain regarding its obligation to defend pursuant to a policy, it may "defend under a reservation of rights while seeking a declaratory judgment that it has no duty to defend." <u>Vanport</u>, 147 Wash.2d at 761.

In the case at bar, plaintiff has sued defendant for breach of its duty to defend. Plaintiff argues that defendant breached its duty to defend by essentially stonewalling plaintiff after plaintiff properly tendered a defense. Plaintiff also argues that defendant breached its duty to defend by

ORDER - 10

ultimately refusing to pay plaintiff's share of liability pursuant to the Foss Thea Waterway mediation demand. Defendant argues that its duty to defend was not triggered and thus was not breached because there was no "suit" against plaintiff. The sole issue for the Court to resolve is whether defendant's duty to defend was triggered. In an effort to make this determination, the Court must examine the relevant language of each insurance policy at issue.

## C.

Policy no. 2118852, a Saint Paul-Mercury Indemnity Company Comprehensive Personal Liability Policy, was issued to Thomas Carstens on April 14, 1953 and was effective until April 14, 1956. Pursuant to said policy and its endorsements, Saint Paul-Mercury Indemnity Company contracted in pertinent part to:

> (a) investigate occurrences covered by the Policy, negotiate the settlement of all claims made as may be deemed expedient by the Company, and to <u>defend suits for damages</u>, even if groundless, brought on account of such claim for damages <u>in the name and on behalf of the Insured</u>.
>
> * * *
>
> Exclusions: This policy does not cover:
> (2) Loss sustained or alleged to have been sustained by any person or persons if caused by:
> (a) the direct prosecution of the Insured's business, occupational or commercial pursuits; or the rendering of any professional services or the omission thereof.

Sternal Decl., Exh. 2 (emphasis added).

It is undisputed that Thomas Carstens has not been personally sued. Likewise, no demand has been made upon the deceased person of Thomas Carstens nor his estate for damages surrounding Carstens Company's liability for any environmental contamination to the Thea Foss Superfund Site. Even if such a suit had been filed, policy no. 2118852 is a comprehensive personal liability policy that was issued to Thomas Carstens and there is no evidence that there were any other insureds on the policy. As such, St. Paul has no duty to defend Carstens under policy no. 2118852. Furthermore, St. Paul has no duty to indemnify Carstens under policy no. 2118852.

Policy no. 504JA3089, a St. Paul Fire and Marine Insurance Company Comprehensive

ORDER - 11

General Liability Policy, was issued to Thomas Carstens and/or Carstens Holding Company and/or Carstens Investment Company on November 30, 1956 and was effective until November 30, 1957. Pursuant to said policy and its endorsements, St. Paul Fire and Marine Insurance Company contracted in pertinent part to:

> D.   DEFENSE, SETTLEMENT, SUPPLEMENTARY PAYMENTS
>
> As respects such insurance as is afforded by the other terms of this Endorsement under Coverage A the Company shall (a) investigate occurrences covered by the Endorsement, negotiate the settlement of all claims made as may be deemed expedient by the Company, and to <u>defend suits for damages</u>, even if groundless, brought on account of such claim for damages in the name and on behalf of the Insured, unless or until the Company shall elect to effect settlement thereof.
>
> * * *
>
> EXCLUSIONS.
> THIS ENDORSEMENT DOES NOT COVER:
> (c) Loss sustained or alleged to have been sustained by any person or persons if caused by:
> (1) the direct prosecution of the Insured's business, occupational or commercial pursuits; or the rendering of any professional services or the omission thereof.

Sternal Decl., Exh. 3 (emphasis added).

It is undisputed that pursuant to policy no. 504JA3089, St. Paul had a duty to "defend suits for damages" which were brought against Carstens. What is at issue between the parties is whether St. Paul's duty to defend was triggered under policy no. 504JA3089. The duty to defend is triggered "whenever a lawsuit is filed against the insured alleging facts and circumstances arguably covered by the policy." <u>Kirk</u>, 134 Wash.2d at 561. The duty to defend is also triggered by the insured's receipt of an EPA PRP letter. See <u>Time Oil Co.</u>, 743 F. Supp. at 1420.

In the case at bar, no "suit" was filed against Carstens until March 3, 2003, when the United States filed <u>United States of America v. Advance Ross Sub Co. et al.</u>, case no. C03-5117RJB, against various parties, including Carstens, regarding liability for the cleanup of Foss Thea Waterway. See  Rumsey Decl., Exh. H.  On April 3, 2003, St. Paul agreed to defend Carstens in

ORDER - 12

United States v. Advance Ross Sub Co. et al., under a reservation of rights to deny coverage.

It is clear to the Court from a review of the evidence before it that prior to March 3, 2003, Carstens did not receive a PRP letter from the EPA. Carstens did receive letters and various correspondence from William Hengemihle and the Thea Foss Participant Group which apprised Carstens of its potential liability for contaminating the Thea Foss Waterway. However, even under the most liberal interpretation of either Aetna Cas. & Sur. Co. v. Pintlar, 948 F.2d 1507, 1517 (9th Cir. 1991) ("[A]n ordinary person would believe that the receipt of a PRP notice is the effective commencement of a suit necessitating a legal defense.") or Time Oil Company v. Cigna Property & Casualty Insurance Company, 743 F. Supp. 1400, 1420 ("[I]n Washington the appellate courts would consider [an] EPA PRP letter to be a suit."), such correspondence did not constitute a PRP letter. At most, the letters sent by Mr. Hengemihle are akin to a demand letter, and as such, cannot trigger the duty to defend. Pintlar, 948 F.2d at 1516 ( "unlike the garden variety demand letter, which only exposes one to a potential threat of future litigation, a PRP notice carries with it immediate and severe implications.") Furthermore, neither of the two exceptions to the duty to defend which are discussed in Vanport apply. As such, St. Paul's duty to defend Carstens under policy no. 504JA3089 was not triggered before March 3, 2003, if at all.

Policy no. 684NA8160, a St. Paul Multicover Policy, was issued to Carstens Company on July 10, 1979 and was effective until July 10, 1980. Pursuant to said policy and its endorsements, St. Paul contracted in pertinent part to:

> **What this agreement covers**
> Your general liability protection covers you and other persons protected under this agreement against claims for bodily injury or damage to tangible property resulting from an accidental event. Bodily injuries resulting in sickness, disease or death, including damages for care and loss of services, are covered. So is the loss of use of tangible property.
>
> We'll consider all bodily injury or property damage caused by continuous or repeated exposure to basically the same conditions to have been caused by one <u>accidental event</u>. However, <u>for us to pay a claim, the accidental event must take place while this agreement is in effect and must be something you didn't expect or intend to happen</u>.

ORDER - 13

* * *

**Additional Benefits**
We'll defend <u>any suit</u> brought against you for damages covered under this agreement, even if the suit is groundless or fraudulent. We have the right to investigate, negotiate and settle any suit or claim if that seems proper and wise.

Well pay all costs of defending the suit, including interest on any judgment. But we won't defend a suit or pay any claim after the limits shown on page 1 of this agreement have been used up paying judgments or settlements.

However, we'll pay premiums for appeal bonds or to release property that's being used to secure a legal obligation, even if they exceed the policy limits. We'll also pay all reasonable costs you incur while helping us investigate or defend a claim or suit against you. This includes earnings you lose after we ask you to help us - up to $50 a day.

* * *

**Liabilities we won't cover**
**Total Exclusions**
We won't cover any of the following liabilities, even if they're assumed under a contract or agreement.

**Pollution**. We won't cover liability claims for injury or damage caused by the continuous or <u>intentional discharge or release of pollutants</u> such as: Smoke. vapors. Soot. Fumes. Acids. Alkalis. <u>Toxic chemicals, liquids or gases</u>. Or <u>waste materials</u>. But we will cover sudden accidents involving these pollutants.

**What to do if you have a loss**

* * *

**Someone is injured or makes a liability claim against you**
If there's an <u>accident</u> or <u>incident</u> covered under this policy you must:
1. Tell us or one of our agents what happened as soon as possible. Include the time and place of the event and the names and addresses of any witnesses and injured people.

* * *

3. <u>Send us copies of all legal documents</u> if you're sued or someone files a claim against you.
4. <u>Cooperate and assist us in securing and giving evidence</u>, attending hearings and trials, and obtaining the attendance of witnesses.
5. <u>Refrain from taking any financial obligations or paying out any money, without our authorization</u>. If you do, we may not reimburse you, even if the cost is covered by this policy. This rule doesn't apply to money spent for emergency first aid to others at the time of an accident.

Sternal Decl., Exh. 4 (emphasis added).

ORDER - 14

It is clear from the language of policy no. 684NA8160 that St. Paul had a duty to defend "any suit" brought against Carstens Company for damages covered under said policy. Again, the duty to defend is triggered "whenever a lawsuit is filed against the insured alleging facts and circumstances arguably covered by the policy." Kirk, 134 Wash.2d at 561. The duty to defend is also triggered by the insured's receipt of an EPA PRP letter. See Time Oil Co., 743 F. Supp. at 1420. The Court has already found that no "suit" was brought against Carstens Company until the United States filed its lawsuit on March 3, 2003. Further, the Court has found that prior to March 3, 2003, Carstens did not receive a PRP letter from the EPA. As such, St. Paul's duty to defend under policy no. 684NA8160 was not triggered until March 3, 2003, if at all.

There is also an issue as to whether Carstens' actions were in fact accidental. Under Washington law, "[a]n accident is never present when a deliberate act is performed unless some additional unexpected, independent and unforeseen happening occurs which produces or brings about the result of injury or death. The means as well as the result must be unforeseen, involuntary, unexpected and unusual." Grange Ins. Co. v. Brosseau, 113 Wash.2d 91, 96, 776 P.2d 123, 125 (1989) (citations omitted).

Carstens argues that it did not intend to pollute the Foss Thea Waterway. St. Paul argues that even though the results of Carstens' actions were unintended, the acts (diverting waste run-off into the Wheeler-Osgood Waterway) were deliberate. Both parties rely on the deposition testimony of William Hengemihle to support their respective positions. Although it is apparent from Hengemihle's testimony that the contaminants for which Carstens has incurred liability were not recognized as such, nor were they tested for during the period of time in which they were discharged, Hengemihle testified that Carstens disposed of its waste directly to the Carstens' slough which in turn emptied directly into the Wheeler-Osgood Waterway. See Rumsey Decl., Exh. C at 23:21-25:22; 25:23-27:19. Although it appears that Carstens did not intend to contaminate the waterway, it is clear that Carstens did intend to drain its waste into the waterway. The fact that Carstens was

ORDER - 15

unaware that it was discharging harmful materials into the waterway is irrelevant for the purpose of determining whether its actions (the discharge of its waste into Wheeler-Osgood Waterway) were intended. As such, Carstens' actions are not accidental.

IV.

Plaintiff argues that St. Paul breached its duty to defend in bad faith. St. Paul argues that its actions were not unreasonable, and as such, did not constitute bad faith. To establish the tort of bad faith, the insured must show that the insurer's actions were unreasonable, frivolous, or unfounded." See Kirk v. Mt. Airy Ins. Co., 134 Wash.2d at 560; see also Dewitt Construction Inc., 307 F.3d at 1138. "Bad faith will not be found where a denial of coverage or a failure to provide a defense is based upon a reasonable interpretation of the insurance policy." Kirk v. Mt. Airy Ins. Co., 134 Wash.2d at 560. Plaintiff's central argument in support of its assertion that St. Paul breached its duty to defend in bad faith is that St. Paul's letters, via Dan Stimax and Arlen Rumsey, denied both coverage and its duty to defend "based on a laundry list of exclusions without any analysis or correlation to the particular claims." See Plaintiff's Motion for Partial Summary Judgment at p. 24 (quoting language from Vanport, 147 Wash.2d at 764).

The Court has reviewed all of the evidence supporting plaintiff's claim, as well as all evidence which supports defendant's position. The Court finds that St. Paul's handling of Carstens' claim, while not an exemplar for customer service, was not unreasonable, frivolous, or unfounded. Unlike the defendant in Vanport, St. Paul responded to plaintiff's inquiries regarding its claims. See Sternal Decl., Exh. 11, 21, 24, 29, 30. In particular, St. Paul, via Dan Stimax and Arlen Rumsey, requested information from Carstens in several letters in an effort to evaluate Carstens' claim. Furthermore, St. Paul provided a limited analysis of some of the policy provisions, in particular the pollution exclusion, and informed the insured that it would have to establish that a "suit" had been commenced against it. See Sternal Decl., Exh. 24. It is also evident that there were phone conversations and e-mail communications between St. Paul and Carstens regarding Carstens' claim for defense. Finally,

ORDER - 16

the Court has already held that St. Paul did not breach its duty to defend pursuant to any of the insurance policies at issue. As such, St. Paul's refusal to defend Carstens prior to March 3, 2003, was based upon a reasonable interpretation of the insurance policies at issue.

### V.

Carstens has brought a claim against St. Paul for violation of the Washington Consumer Protection Act. In order to establish a violation of the Washington Consumer Protection Act ("CPA"), Carstens must prove that St. Paul's acts or practices: (1) are unfair and deceptive; (2) occurred in the conduct of trade or commerce; (3) affected the public interest; (4) were the actual cause of injury to plaintiff's business or property; and (5) injury actually resulted. Hangman Ridge Training Stables, Inc. v. Safeco Title Ins. Co., 105 Wash.2d 778, 784-85, 719 P.2d 531, 535 (1986) (En Banc).

Carstens essentially argues that St. Paul has violated provisions of WAC 284-30-330, thereby violating the CPA. St. Paul argues that it has not violated provision of WAC 284-30-330. The Court finds it unnecessary to provide an in-depth analysis of the plaintiff's claim under the CPA. The Court has already determined that: (1) St. Paul did not breach its duty to defend under any policy at issue; and (2) St. Paul did not act in bad faith. As such, St. Paul's actions were neither unfair nor deceptive. There is no need to go any further.

The first part of the Court's analysis under the CPA is closely related to the Court's analysis under the bad faith standard. See e.g., Dewitt Construction Co., 307 F.3d at 1138. Because Carstens failed to establish a claim against St. Paul for bad faith, Carstens cannot establish a claim against St. Paul under the CPA. Accordingly, Carstens' claim against St. Paul for violation of the CPA must be dismissed as a matter of law.

### VI.

In summary, the material facts of this case are virtually undisputed. The Court has reviewed the entire record, including the evidence and arguments of the parties, and finds as follows: (1) St.

ORDER - 17

Paul did not breach its duty to defend Carstens under policy nos. 2118852, 504JA3089, or 684NA8160. No "suit" was filed against Carstens until March 3, 2003. At that time, there was a question as to whether St. Paul's duty to defend Carstens was triggered because the facts and circumstances alleged in the complaint could have been covered by at least one of the policies. On April 3, 2003, St. Paul agreed to defend Carstens until a determination could be made as to coverage under each policy. Today, the Court has determined that there is no coverage for the claims asserted against Carstens under policy no. 2118852.[6] The Court also finds that St. Paul has not acted in bad faith because there was no "suit" filed against its insured until March 3, 2003, and its actions regarding the investigation of Carstens' claim for a defense were not unreasonable. Lastly, the Court finds that St. Paul has not violated the Washington Consumer Protection Act because its actions where neither unfair nor deceptive.

There are unresolved issues with respect to coverage under policy nos. 504JA3089 and 684NA8160. The Court is not prepared to make a determination of coverage with respect to said policies on the evidence and argument that it has before it. Although the Court finds that the intentional dumping of Carstens' waste and run-off into the Wheeler-Osgood Waterway was not an accident, there are questions as to coverage under the remaining policies. Specifically, the Court is concerned with naked assertions that Carstens should be denied coverage because of pollution without either evidence and argument regarding whether the discharged substances can be characterized as "pollutants" if they were not recognized as pollutants when the discharge occurred.[7] The Court also needs more information with respect to the application, if at all, of the business

---

[6] The Court's primary focus in its Order was whether St. Paul's duty to defend was triggered. However, it is apparent from a review of the policy language and the evidence in the record that policy no. 2118852 was a personal liability policy issued to Thomas Carstens. There is no evidence that Carstens Company was ever an insured on the policy.

[7] The obvious issue is if the substances in Carstens' waste were not considered pollutants, how could Carstens agree to refrain from their discharge, or know that by discharging said substances it would not be entitled coverage under the insurance policies it purchased.

ORDER - 18

pursuits exclusion found in policy no. 504JA3089. As such, the Court has not made a determination regarding coverage under policies nos. 504JA3089 and 684NA8160.

ACCORDINGLY,

IT IS HEREBY ORDERED:

(1) Plaintiff's Motion for Partial Summary Judgment (dkt. #9) is DENIED;

(2) Defendant's Cross Motion for Summary Judgment (dkt. #30) is GRANTED as to the issue of whether St. Paul breached of its duty to defend. The Court finds that St. Paul did not breach its duty to defend under policy nos. 2118852, 504JA3089 and 684NA8160;

(3) Defendant's Cross Motion for Summary Judgment is GRANTED as to the issue of whether St. Paul acted in bad faith. The Court finds that St. Paul did not act in bad faith with respect to any of the policies at issue;

(4) Defendant's Cross Motion for Summary Judgment is GRANTED as to the issue of whether St. Paul violated the Washington Consumer Protection Act. The Court finds that St. Paul's actions did not violate the Washington Consumer Protection Act;

(5) Defendant's Cross Motion for Summary Judgment is GRANTED as to the issue of whether St. Paul has a duty to indemnify Carstens under policy no. 2118852. St. Paul has no duty to indemnify Carstens under policy no. 2118852. Defendant's Cross Motion is DENIED as to the issue of whether St. Paul has a duty to indemnify Carstens under policy nos. 504JA3089 and 684NA8160; and

(6) The Clerk is directed to issue judgment accordingly.

DATED this 11th day of August, 2003.

.

*S/ Franklin D. Burgess*
FRANKLIN D. BURGESS
UNITED STATES DISTRICT JUDGE

ORDER - 19